UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA NEER, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. 14 C 4378 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rebecca Neer filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

2d 973, 976-77 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on June 3, 2011, alleging she became disabled on January 1, 2008, due to panic disorder, PTSD, major depression, bi-polar disorder, and anxiety. (R. at 94, 164-70). The application was denied initially on August 31, 2011, and upon reconsideration on January 11, 2012. (R. at 90-94, 101-03). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on September 21, 2012, in Orland Park, Illinois. (R. at 32-82). The ALJ also heard testimony from Julie Bose, a vocational expert (VE). (*Id.*). Plaintiff's counsel submitted additional medical records following the hearing that are now part of the administrative record. (R. at 487-505, *see* Ex. 12F-13F).

The ALJ denied Plaintiff's request for benefits on January 7, 2013. (R. at 18-27). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (R. at 20).[2] At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder and generalized anxiety disorder (GAD). (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 20-22). The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that,

---

[2] The ALJ notes claimant worked from October 2009 until May 2010 as a part-time veterinarian technician/receptionist, but that the earnings did not rise to the level of substantial gainful activity. (R. at 20).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant

through the last date insured, Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to work involving simple, routine, repetitive tasks and only occasional contact with the general public, co-workers and supervisors." (R. at 23). The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (R. at 26). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 26). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act from January 1, 2008, the alleged onset date, through December 31, 2011, the date last insured. (R. at 27).

The Appeals Council denied Plaintiff's request for review on April 30, 2014. (R. at 1-3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions

---

can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evi-

dence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

Plaintiff was diagnosed with Post-Traumatic Stress Disorder (PTSD), major depression, and bipolar disorder when she was 17 years old. (R. at 347). Plaintiff reports a history of emotional, physical, and sexual abuse beginning when Plaintiff was 6 years old. (R. at 340, 347). Plaintiff also reported two suicide attempts, one in 2001, and an overdose of Xanax in 2003. (R. at 314).

On November 1, 2010, Plaintiff met with Sandra McLain Jones, MSW, LCSW, at the University of St. Francis Health and Wellness Center (USF) for an initial depression screening. (R. at 345). Plaintiff met with Ms. Jones for therapy sessions through April 12, 2012. (R. at 469-78). Plaintiff participated in weekly counseling sessions until June 21, 2011. (R. at 311-345). In June 2011, Plaintiff noted that due to her financial situation, she would not be able to maintain weekly counseling sessions. (R. at 315). Therapy notes document Plaintiff's difficulty maintaining her therapy sessions given that she had no insurance, income, or financial resources. (R. at 315-16, 320-22, 332, 376-79, 469, 478). Plaintiff continued seeing Ms. Jones, but on a less frequent basis. (R. at 376-420, 469-78).

Counseling notes show varying affect and mood ranging from significantly depressed and moderately anxious, isolative behavior, suicidal thoughts, sleep difficul-

ties including nightmares, lack of energy, appetite fluctuations, difficulty concentrating, irritability, crying, problems with noise triggering anxiety, and repeated diagnoses of Major Depressive Disorder and Post-Traumatic Stress Disorder. (R. at 307-08, 311-13, 315-34, 336-45, 376-80, 382-87, 469, 478).

Plaintiff also saw nurse practitioner Katherine M. Sikic, APN, CNP, at USF for medications. (R. at 314, 325, 381, 467). On June 2, 2011, Ms. Sikic assessed Plaintiff with biopolar disorder and an anxiety state. (R. at 314). Ms. Sikic prescribed Trazadone and Paxil. On April 19, 2012, Ms. Sikic noted that the depression was worsening with decreased medication, and again diagnosed anxiety state and bipolar disorder. (R. at 467). She took Plaintiff off Paxil, and prescribed Aplenzin. (R. at 467-68).

On June 18, 2012, Plaintiff had a "Level of Care Screening" at Alexian Brothers Behavioral Health Hospital and reported suicidal thoughts, concentration difficulties, tearfulness, appetite changes, loss of motivation, anxiety, panic attacks, intrusive thoughts, low self-esteem, disturbed sleep, racing thoughts, sadness, loss of interest in activities, difficulty falling asleep, sleeping on and off during day, poor appetite, loss of interest in activities, inability to tolerate loud noises, hypersensitivity to voices, and avoidant behavior. (R. at 493-95). She had restless motor activity; vague and distorted thought processes; an anxious, tense, fearful, sad, tearful, and guarded affect and mood; and suicidal thoughts. (R. at 496).

In July 2012, Plaintiff began treatment at Aunt Martha's Healthcare Network. (R. at 482). She saw H. Alexander, M.D., on July 25, 2012 (R. at 485) and September

5, 2012. (R. at 488). Notes indicate ongoing symptoms of depression, anxiety, isolative behavior, poor concentration and decision making, feelings of worthlessness, mood swings, and trouble sleeping. (R. at 482-84, 488).

**Consultative and Non-Examining DDS Doctors**

On August 15, 2011, William N. Hilger, Ph.D., examined Plaintiff for psychological testing for the Bureau of Disability Determination Services. (R. at 347-50). Notes state Plaintiff takes Trazadone and Paxil, and sees her therapist weekly. Dr. Hilger concluded that Plaintiff appears to have "fair mental potential but little motivation to pursue or to perform work related activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaption." (R. at 350). Her symptoms included difficulty leaving her home, anxiety, trouble concentrating, mood swings, and racing thoughts. (R. at 348).

On August 30, 2011, Kurt Boyenga, Ph.D., reviewed the file for the Agency (R. at 352-368) and opined that Plaintiff's mental impairments imposed mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (R. at 362). Dr. Boyenga further opined that Plaintiff had moderate limitations with her abilities to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; respond ap-

propriately to changes in the work setting; and travel in unfamiliar settings or use public transportation. (R. at 366-67). Dr. Boyenga's opinions were subsequently affirmed by another Agency reviewer. (R. at 299-301).

**Plaintiff's Testimony**

Plaintiff has a high school diploma and a year of education at a junior college. (R. at 39). During her last year of high school, she attended an alternative high school due to her emotional problems making it difficult for her to concentrate. (R. at 59). At the junior college she made the honor roll both semesters. (R. at 72).

Plaintiff was seeing Sandra McClain Jones, a social worker, for two years, at Saint Francis Health and Wellness Center, on a weekly and then bi-weekly basis. (R. at 41, 55). Plaintiff could no longer afford therapy, and stopped seeing Ms. Jones in April 2012. (R. at 41, 56). She was referred to Dr. Alexander at Aunt Martha's. (R. at 57). In June 2012, when she went to Alexian Brothers, the hospital wanted to admit her as an inpatient for treatment. However, she did not have insurance, and the hospital was unable to provide financial assistance. (R. at 57-59).

At the time of the hearing, Plaintiff was taking Trazodone, Prozac, and Valium, but not Paxil. (R. at 41-42). Plaintiff reported side effects including lethargy, difficulty sleeping, agitation, nervousness, weight fluctuation, and tiredness. (R. at 42-43).

She last worked October—May 2010 as a part-time receptionist. (R. at 43-44). In 2009, she worked as a vet technician and receptionist. She had to stop working at both places due to mental impairments. (R. at 43-44). She had stress, and was

overwhelmed working 15 hours a week. (R. at 60-61). She testified that she cannot work now because she has difficulty being around people, becomes nervous, has a difficult time concentrating and "putting my thoughts together," and becomes overwhelmed very easily. (R. at 45). For the past two years, unless she has had a doctor's or therapist's appointment, she has not left her house. (R. at 46). She has a hard time focusing on things for too long, she does not sleep very well at night, and she needs to nap during the day for an hour or two. (R. at 48-49). On September 20, 2011, Plaintiff submitted a Remark, included in the Administrative Record, noting her history of sexual abuse. (R. at 371-72).

## V. DISCUSSION

Plaintiff argues that: (1) the ALJ erred by not properly assessing her mental limitations; (2) there were errors in the credibility assessment; and (3) the ALJ erred by not assessing her need to nap and her aversion to noise.

**A. The RFC did not properly account for Plaintiff's mental impairment.**

The ALJ determined that Plaintiff's major depressive disorder and generalized anxiety disorder are severe impairments. (R. at 20). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff has the RFC to perform the full range of work at all exertional levels, but that she was limited to "work involving simple, routine, repetitive tasks and only occasional contact with the general public, co-workers and supervisors." (R. at 23). Based on the ALJ's RFC assessment and the VE's testimony,

the ALJ determined that Plaintiff is capable of performing work as a housekeeping cleaner, a laundry folder, and a cleaner polisher. (R. at 27).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling (SSR)[4] 96–8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96–8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and re-

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

strictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The ALJ determined that Plaintiff was moderately limited in her ability to maintain concentration, persistence or pace. (R. at 22). In determining the RFC, the ALJ limited Plaintiff's non-exertional limitations to "work involving simple, routine, repetitive tasks and only occasional contact with the general public, co-workers and supervisors." (R. at 23). Based on the ALJ's assessment, this determination is improper.

In the Seventh Circuit, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Indoranto*, 374 F.3d at 473–74 ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); *see also* SSR 96–5p, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (hypo-

thetical question "must account for documented limitations of 'concentration, persistence, or pace'"). Although it is not necessary that the ALJ use the precise terminology of "concentration," "persistence," or "pace," the Court cannot assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record. *Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 857.

The ALJ posed three hypotheticals to the VE: the first asked the VE to consider an RFC of no exertional limitations, but that the plaintiff would be "limited to work involving simple, routine, repetitive tasks, and occasional contact with the general public, co-workers, and supervisors." (R. at 77). The VE testified that a person with this RFC could perform work as a housekeeping cleaner, laundry folder, and a cleaner polisher. (R. at 78). The ALJ then posited a second hypothetical, adding to the criteria of the first hypothetical RFC that the plaintiff is "unable to maintain concentration, persistence, and pace on simple tasks for two hours or more." (R. at 78). The VE testified that there would be no competitive employment available in this situation. (R. at 78-79). The ALJ then posited a third hypothetical, adding to the first hypothetical RFC that plaintiff was "unable to work in tandem or in close proximity to others without becoming unduly distracted." (R. at 79). The VE testified that there would be no competitive employment available. (R. at 79).

In her decision, the ALJ determined that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (R. at 22). Yet, when accounting for Plaintiff's difficulties with concentration, persistence, and pace, the VE testified that there would be no employment available. (R. at 78-79). Despite the ALJ's find-

ing, the ALJ's RFC fails to take into consideration any limitations with concentration, persistence, or pace. Instead, the RFC only accounts for "simple, routine tasks,"—an assessment the Seventh Circuit has explicitly indicated fails to account for concentration, persistence, or pace. Moreover, while the RFC also notes that Plaintiff would be limited to "only occasional contact with the general public, coworkers and supervisors" (R. at 23), these limitations also fail to account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. The Seventh Circuit has repeatedly rejected the idea that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858–59 (citing *Stewart*, 561 F.3d at 685 (collecting cases)); *see also Craft*, 539 F.3d at 677–78 (restricting claimant to unskilled, simple work does not account for his difficulty with memory, concentration, and mood swings); *Young*, 362 F.3d at 1004. *See also Varga*, 794 F.3d at 815 (Limited interaction with supervisors, coworkers and the public "deals largely with workplace adaption, rather than concentration, pace, or persistence.").

The Commissioner argues that the ALJ did, in fact, account for Plaintiff's moderate limitations in concentration, persistence, or pace, because the ALJ relied on Dr. Boyenga's RFC assessment. (Resp. at 4). Dr. Boyenga noted Plaintiff was moderately limited in her "ability to maintain attention and concentration for extended periods" and moderately limited in her ability to work in coordination with or proximity to others without being distracted by them, complete a normal workday or

workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. (R. at 366-67). Accordingly, the Commissioner argues that the ALJ "recognized the moderate limitations identified by Dr. Boyenga and accepted his RFC determination for simple, routine, and repetitive work with reduced interpersonal contact. Therefore, Dr. Boyenga translated his findings of moderate limitations in the areas of concentration, persistence, or pace into a specific RFC finding and, in accordance with the Seventh Circuit [ . . .], the ALJ gave great weight to this specific RFC finding." (Resp. at 4) (citation omitted).

There are two problems with the Commissioner's argument. First, the Commissioner's extrapolation is nowhere articulated by the ALJ. Second, what the Commissioner leaves out in her Response is that Dr. Boyenga concluded that Plaintiff was only mildly limited in her difficulties in maintaining concentration, persistence, or pace (R. at 362), while the ALJ determined Plaintiff had a moderate degree of limitations in this area. (*See* R. at 22). Despite the Commissioner's assertion, there is no indication in the ALJ's decision that she relied on Dr. Boyenga's opinion that Plaintiff had only "mild" limitations, and the Commissioner may not rely on evidence or explanations not used by the ALJ. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("But the agency's attorneys may not advance an explanation the agency never made itself and may not attempt to support the decision with evidence

the agency apparently did not consider."); *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) (forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced). The ALJ specifically stated that Plaintiff had moderate limitations, yet failed to account for this in the RFC.[5] The Court finds this particularly troubling considering the VE's testimony that there would be no competitive employment available for an individual with the same age, education, and work experience as the claimant having the RFC of "no exertional limitations; limited to work involving simple, routine, repetitive tasks, and occasional contact with the general public, co-workers and supervisors" who was "unable to maintain concentration, persistence, and pace on simple tasks for two hours or more." (R. at 77-79).

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Yurt*, 758 F.3d at 859 ("This failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC requires us to remand for further proceedings."). For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence.

---

[5] The Commissioner also attempts to distinguish this case by noting the ALJ made its determination of "moderate limitation in concentration, persistence or pace" in the step three analysis. (Resp. at 5). This is not persuasive. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

**B. Summary**

Because the Court is remanding on the RFC issue, the Court chooses not to address Plaintiff's argument that the ALJ erred in her credibility determination and 96-8p assessments regarding naps and Plaintiff's aversion to noise. On remand, the ALJ shall assess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse the ALJ's decision and remand for additional proceedings [14] is **GRANTED**, and the Commissioner's motion for summary judgment [21] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 5, 2016

MARY M. ROWLAND
United States Magistrate Judge